UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THE RADFORD COMPANY,

           Plaintiff,

v.                                                                        Case No. 08-C-461

RUAN TRANSPORT CORP.,

           Defendant.

**DECISION AND ORDER**

Plaintiff The Radford Company ("Radford") filed this action against its former trucking company, Ruan Transport Corporation ("Ruan"). In the complaint, Radford asserts multiple claims based on Ruan's alleged misrepresentation of a Transportation Agreement, and additional claims based on breach of the Transportation Agreement or a subsequent agreement. This matter is before me on Ruan's motion for summary judgment. For the reasons stated below, I will grant the motion.

**I. BACKGROUND**

There is little dispute between Radford and Ruan on the basic facts, as opposed to the inferences to be drawn from those facts, which at this stage are viewed in the light most favorable to the plaintiff. In 1988, Radford, a window and door distributor, began leasing tractors from Ruan for use in its shipping operations. The drivers were Radford employees working under a collective bargaining agreement. Beginning in the 1990s Radford and Ruan discussed the possibility of outsourcing Radford's shipping operations to Ruan. On September 2, 2003, the parties entered into

a Transportation Agreement in which Radford outsourced its shipping operations consisting of thirteen drivers to Ruan.

On April 17, 2006, Radford received a demand for payment for withdrawal liability from its former drivers' pension fund, Central States Southeast and Southwest Area Pension Fund, ("Central States"). (DPFOF ¶¶ 23-26.) Central States demanded immediate payment of over $1 million in withdrawal liability for underfunded benefits. On August 26, 2006, Radford and Ruan entered into a Withdrawal Liability Payment Agreement ("WLPA") to avoid immediate litigation with Central States and acceleration of the entire withdrawal liability payment. (DPFOF ¶¶ 27-31.) Under the WLPA, both parties agreed to: (1) split the monthly withdrawal liability payments until a settlement with Central States could be reached, (2) reserve all rights under the TA, and (3) not allocate financial responsibility for the withdrawal liability assessed by Central States. (DPFOF ¶¶ 27-31.) Radford and Ruan attempted to reach a settlement with Central States that would undo the withdrawal liability assessment, but failed. Ruan thereafter stopped paying its portion of the withdrawal liability payment to Central States as agreed upon in the WLPA. (DPFOF ¶¶ 49-50.) Radford seeks compensatory, statutory, and punitive damages.

**II. ANALYSIS**

Summary judgment is proper if the pleadings, deposition, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Radford has called for relief on seven different claims against Ruan. These claims will be separated into three categories for analysis: (1) the misrepresentation claims, (2) the breach of the TA claims, and (3) the breach of the WLPA claims.

### A. Misrepresentation

Under Wisconsin law, the claims of intentional misrepresentation, strict-liability misrepresentation, negligent misrepresentation, and fraudulent inducement each require that "the defendant made a representation of fact." *Malzewski v. Rapkin,* 2006 WI App 183, ¶¶ 17-22, 296 Wis. 2d 98, 723 N.W. 2d 156. Alleged representations regarding the legal effect of a written instrument are representations of law or expressions of opinion as to what governs a particular transaction and are generally not actionable. *Bentley v. Fayas,* 260 Wis. 177, 183-84 (Wis. 1951); *Creeasy Corp. v. Dunning,* 182 Wis. 388, 396, 196 N.W. 775, 779 (Wis. 1924); *Nelson v. Taff*, 175 Wis. 2d 178, 182 (Wis. Ct. App. 1993); *Ritchie v. Clappier,* 109 Wis. 2d 399, 402 (Wis. Ct. App. 1982).

> Those who sign written instruments are presumed to know their contents and their legal effects; . . . where . . . the parties stand at arm's length and no confidential relation or disability is shown and where the contract is signed with full opportunity to know its contents, there are very cogent reasons for holding that the plain meaning expressed in the writing shall prevail even though that meaning has been misrepresented.

*Creeasy,* 182 Wis. at 396, 196 N.W. at 779.

The actionable exception to this general rule is "[w]here one … had superior means of information[,] professe[d] a knowledge of the law, and thereby obtain[ed] an unconscionable advantage of another who [was] ignorant and [was] not . . . in a situation to become informed . . ."

3

*Nelson,* 175 Wis. 2d at 182 (quoting *Rusch v. Wald,* 202 Wis. 462, 464, 232 N.W. 875, 876 (Wis. 1930)); *Ritchie,* 109 Wis. 2d at 402. This exception has been demonstrated in two different Wisconsin cases regarding a written instrument. In *Allison v. Wm. Doerflinger Co.*, an insurance adjuster convinced an elderly woman, who was hospitalized and medicated after being injured in a department store, to sign an instrument releasing the store from liability. 208 Wis. 206, 242 N.W. 558 (1932). In *Ellis v. Gordon,* the unrepresented and illiterate defendant transferred a valuable leasehold upon reliance on the misrepresentation of the plaintiff's attorney, who had superior knowledge of the surrounding circumstances. 202 Wis. 134, 231 N.W. 585, 587 (Wis. 1930). Both cases illustrate the professed superior knowledge of the law and the level of unconscionability required to be held as exceptions to the general rule not allowing legal action on misrepresentations of law or expressions of opinion.

Radford's misrepresentation claims are based on the allegation that Ruan's Kent Havens represented that signing the Transportation Agreement would *not* result in the assessment of withdrawal liability. (DPFOF ¶¶ 17-18, 22.) Radford asserts that its employees had little experience in assessing potential liability in the context of outsourcing. Radford was represented by counsel in its negotiations with its own union, and its attorney participated in some aspects of the Transportation Agreement. Even so, its attorney's involvement was limited, and he had no experience in the area of withdrawal liability. Radford's president, Michael Walsh, never asked the law firm for advice about withdrawal liability. In contrast, Radford asserts, Ruan was very experienced with withdrawal liability issues. It is one of the largest transportation companies in the country, and one of its vice-presidents, Kent Havens, had ample experience with withdrawal liability. According to Radford, Havens held himself out to be an "expert," and when he assured

4

Radford that there would be no withdrawal liability, they duly relied on that representation. In fact, according to Radford, "Walsh did not ask any Davis & Kuelthau, s.c. lawyers to consider the issue of withdrawal liability because he had total confidence in Mr. Havens." (PPFOF ¶ 45.)

Regardless of the truth of these allegations, Ruan's alleged representations about withdrawal liability are unquestionably representations of law or expression of opinions. As noted above and in a previous order in this case, misrepresentations of law are generally not actionable. The exceptions detailed above do not apply here. Even if Ruan professed knowledge of the law regarding withdrawal liability resulting from the Transportation Agreement (although I note Mr. Havens, who allegedly made the representations, was not an attorney), Ruan did not have superior means of information and the result was not unconscionable. Radford entered into the collective bargaining agreement with its drivers' union and therefore should have known what events would trigger withdrawal liability. Indeed, Radford admits it was "concerned" about potential withdrawal liability, and it is therefore puzzling why it would rely on quasi-legal advice coming from the other side of the bargaining table.

This is not to suggest that any words uttered by a lawyer or any speech involving a contract can never be actionable. It is not difficult to imagine a scenario in which one party lies about a key term in an agreement, for example, by stating that the limit of liability is one million dollars when in fact it is ten million, or that the contract is for only one year when in fact it is for twenty.[1] Such representations are much closer to misrepresentations of fact. This is not what happened here. Ruan did not misrepresent any fact about the agreement itself, it merely offered an opinion about a certain collateral *effect* of the agreement. Ruan did not have superior means of information, but

---

[1] Whether reliance would have been reasonable is another question.

5

rather all the relevant information was equally available to both parties during negotiation and execution of the Transportation Agreement. Moreover, Ruan did not have an unconscionable advantage over Radford. Radford, a business entity, was not ignorant as to the possibility of withdrawal liability and had the opportunity to seek the advice of counsel regarding this issue. Thus, Ruan's alleged representations (Havens denies making such statements) are a far cry from the unconscionable advantage, illustrated in *Allison* and *Ellis*, that is required in order for a representation of law to be actionable as an exception to the general rule. In fact, allowing such a claim to proceed would provide a perverse incentive by rewarding ignorance of the law, and it would transform an arm's length negotiator into a kind of quasi-fiduciary. Radford has not provided any authority for such a result, and accordingly the misrepresentation claim will be dismissed.

### B. Breach of the Transportation Agreement

Radford also brings a claim for breach of the Transportation Agreement. It asserts that the Transportation Agreement requires Ruan to assume any withdrawal liability because Section 17 of the agreement states as follows:

> PENSION INDEMNIFICATION
> [Ruan] agrees to assume [Radford's] pension obligations after the effective date of this agreement under [Radford's] labor contract pertaining to [Radford's] current drivers, dated June 1, 1999 through May 31, 2003. In the event of termination of this agreement by [Radford] on or before December 31, 2015, for reasons other than the substantial default by [Ruan], and if as a direct and proximate result of such termination [Ruan] permanently lays off a sufficient number of employees which would normally result in a withdrawal liability under the Teamsters Pension Fund… [Radford] shall be responsible to pay to [Ruan] an amount equal to the withdrawal liability…

(PPFOF ¶ 32.)

6

Radford argues that the term "pension obligations" was intended to include any withdrawal liability arising out of the transfer of its employees to Ruan. The contract is governed under Iowa law, where "[c]onstruction of a contract is the process of determining its legal effect and is always a question of law for the court." *Korsmo v. Waverly Ski Club,* 435 N.W.26 746, 748 (Iowa Ct. App. 1988). The purpose of contract interpretation is to determine the intent of the parties; however, the intent of the parties for an unambiguous contract is determined from the plain language of the contract itself. *Id.; Campbell v. Mid-America Constr. Co.*, 567 N.W.2d 667, 669-70 (Iowa Ct. App. 1997); *State Public Defender v. Iowa Dist. Court for Warren County*, 594 N.W.2d 34, 37 (Iowa 1999). Ambiguity cannot be created over the parties' disagreement of a contract term. *Tom Riley Law Firm v. Tang,* 521 N.W.2d 758, 759 (Iowa Ct. App. 1994).

Withdrawal liability occurs "[if] an employer withdraws from a multiemployer plan in a complete withdrawal," which thus triggers employer liability for "the allocable amount of unfunded vested benefits" as adjusted by the code. 29 U.S.C. 1381. Thus, withdrawal liability is essentially a past, unpaid pension obligation. *Id.* The plain language of the Transportation Agreement states that "Carrier [Ruan] agrees to assume Shipper's pension obligations *after* the effective date of this Agreement under Shipper's labor contract pertaining to Shipper's current drivers, dated June 1, 1999 through May 31, 2003." (PPFOF ¶ 32)(emphasis added). Here, the withdrawal liability is a pension obligation that occurred during the period Radford was responsible for pension contributions and *before* the effective date of the agreement. Moreover, Ruan agreed to assume the pension obligations under Radford's labor contract, and that contract makes no mention (naturally) of withdrawal liability at all. Accordingly, there is no reason to interpret "pension obligations" as broadly as Radford does.

7

This interpretation corresponds to the plain intent of the phrase "pension obligations" and fits with the facts of this case. As Ruan explains, the clear purpose of such a clause was to require Ruan, now that it was going to be the drivers' employer, to assume Radford's contributions to the drivers' pension fund under the labor agreement Radford had with its drivers. It further provides that if Radford terminates the agreement and causes *Ruan* to incur withdrawal liability, then Radford would indemnify Ruan for that expense. Nothing in the paragraph suggests that the parties were contemplating indemnification for pre-existing withdrawal liability, and that is why the clause is triggered only on the effective date of the agreement. In fact, this is suggested by a contemporaneous email from Radford's Walsh, who noted that "[a]t some point the calculated liability will begin to shift from Radford to Ruan." (PPFOF ¶ 26.) They were talking about a liability that "will begin to shift" at some point in the future – not a current or pre-existing liability for withdrawal.

Moreover, given the facts of this case, Radford's proposed interpretation makes little sense. It argued above that it was concerned about potential withdrawal liability and relied on Havens' promise that the agreement would not give rise to such liability. But if it thought the agreement itself also *indemnified* Radford for that liability, why would it have been so concerned? It does not make a lot of sense for Radford to have been defrauded about the effect of an agreement, but at the same time to have believed that the agreement protected it from the effect it feared. In any event, I am satisfied that the agreement is unambiguous in requiring only that Ruan will assume Radford's pension obligations after the effective date of the agreement, and thus Ruan has not breached the agreement by failing to indemnify Radford.

8

### C. Breach of the Withdrawal Liability Payment Agreement

Finally, Radford claims Ruan has breached the WLPA by ceasing payments to Central States. To recall, the parties entered into the WLPA after Radford received a notice of withdrawal liability from Central States, and the agreement was designed (according to its preamble) as a temporary measure to forestall Central States from accelerating the payment due and to avoid litigation with Central States. (Noorlander Aff., Ex. H.)

Ruan describes the agreement as a "stop gap" measure, and that seems to be an accurate description of it. The WLPA is a one-page document designed with a very limited purpose in mind: "This Agreement is made for the sole limited purpose of accommodating the Fund's demand for withdrawal liability installment payments in order to avoid the cost and administrative burden of immediate litigation . . ." (*Id.*) It is premised on Central States, at some undetermined time, retracting its requirement for withdrawal liability payments, and it assumes Central States would be issuing a refund once that occurred. The WLPA also states that it "may not be used by either Party in any manner, future litigation, alternative dispute resolutions, negotiations, or any contested case, except those with respect to the interpretation or enforcement of [the WLPA]. Radford and Ruan will each retain all of their respective rights and remedies under the Transportation Agreement . . . and the terms of this Agreement shall not be used in any way relating to the Transportation Agreement." (*Id.*)

Based on this language, it is abundantly clear that the WLPA was not intended to trump the terms of the Transportation Agreement, but that would be the practical effect of accepting Radford's argument. To hold that Ruan is in breach of the WLPA, which requires the making of monthly installment payments, would mean that Ruan would have to keep making such payments even

9

though the Transportation Agreement does not require them. Suing Ruan for breach of the WLPA simply does not make sense once it is clear that the Transportation Agreement does not impose that underlying liability on Ruan. The WLPA is an *ad hoc* agreement whose viability seems to have collapsed now that Central States has not backed down from its position that the Transportation Agreement triggered withdrawal liability. Accordingly, any claim for its breach is foreclosed by my conclusion that the Transportation Agreement does not require Ruan to pay for withdrawal liability.

For the reasons given above, I conclude that Ruan is entitled to summary judgment in all respects, and its motion is therefore **GRANTED**. The case is **DISMISSED**.

**SO ORDERED** this   30th   day of December, 2009.

       s/ William C. Griesbach
      William C. Griesbach
      United States District Judge